| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| ----------------------------------------------------------------x | |
| In re: | Chapter 11 |
| ROCK 49TH REST. CORP., | Case No. 09-14557 (ALG) |
| Debtor. | |
| ----------------------------------------------------------------x | |

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Counsel for Rock 49th Restaurant Corporation
  By:  Jonathan S. Pasternak, Esq.
       Dawn K. Arnold, Esq.
       Julie A. Cvek, Esq.
550 Mamaroneck Avenue
Harrison, New York 10528

JAFFE, ROSS & LIGHT, LLP
Special Landlord/Tenant Counsel for Rock 49th Restaurant Corporation
  By:  Burton R. Ross, Esq.
880 Third Avenue
New York, New York 10022

LAMBERT & SHACKMAN, PLLC
Counsel for 1251 Americas Associates II, LP
  By:  Thomas C. Lambert, Esq.
       Steven Shackman, Esq.
274 Madison Avenue
New York, New York 10016

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court are cross-motions for summary judgment filed by the Debtor/tenant, Rock 49th

Restaurant Corporation ("Tenant"), and the Creditor/landlord, 1251 Americas Associates II, LP

("Landlord"), in a dispute relating to charges for steam and tax escalation. Tenant has moved for

1

summary judgment on the following issues: (1) whether Tenant is liable for the charges for steam as part of its monthly rent, and (2) whether Tenant is liable under a tax escalation clause for additional rent. Landlord opposes Tenant's motion and has moved for summary judgment on both the steam and tax escalation issues. Both issues require the construction of the Lease entered into by the parties on October 1, 1997, and amended on March 1, 2003 (the "Lease"). The motions are determined on the following findings of fact and conclusions of law.

## I.  BACKGROUND

Tenant, a restaurant with a long-term lease at Rockefeller Center, filed its petition under Chapter 11 of the Bankruptcy Code on July 21, 2009. Prior to its petition, it was involved in various disputes with the Landlord, including litigation relating to water leaks (resolved in Tenant's favor in the State courts) and electric and work order overcharges (resolved, so far, in Landlord's favor). At the commencement of this case, Tenant and Landlord were also embroiled in a dispute involving whether Tenant is liable for charges for steam and tax escalation. At a hearing on October 1, 2009, the parties agreed to submit these issues to this Court for decision.

## II.    DISCUSSION

In accordance with Bankruptcy Rule 7056, which incorporates Fed.R.Civ.P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also In re Ames Dep't Stores, Inc.*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). A fact is considered material if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The fact that both parties have moved for summary judgment does not establish that there are no material facts in dispute. *See Morales v. Qintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001); *MG Ref. & Mktg., Inc. v. Knight Enters, Inc.,* 25 F. Supp. 2d 175, 180 (S.D.N.Y. 1998).

For the reasons stated hereafter, the Court finds that there is no genuine issue as to any material fact relating to the construction of the Lease and the parties' rights and obligations thereunder, but that further proceedings are required on the issue of damages.[1]

**Steam Issue**

Six clauses of the Lease are relevant to the dispute regarding payment for steam:

> § 18.5. Low pressure steam shall be furnished to the Premises at Landlord's reasonable cost if requested by Tenant.
>
> § 18.4. Landlord shall furnish adequate domestic cold water for normal use in the Premises, including, without limitation, use in its kitchen and in bathroom, lavatory and toilet facilities.
>
> § 19.1. Landlord shall ... supply from 10:00 A.M. to 11:30 P.M., Monday through Saturday, other than on federal or state holidays ("Business Hours"), heat in the cold season.
>
> § 19.2. Landlord shall make available chilled water 24 hours a day.
>
> § 1.3(ii) Any amounts billed by the Landlord to Tenant pursuant to the terms of the Lease ... shall be deemed to be additional rent hereunder.

---

[1] Interlocutory summary judgment may be rendered on liability, with further proceedings on damages. F.R.Civ.P. 56(d)(2).

3

> § 18.6.  Tenant shall be responsible for the cost of all hook-ups for ... steam.

There is no dispute that Landlord has been providing steam, and that Tenant has in turn used it to provide hot water for the restaurant and to augment heat provided by the Landlord through a separate system.  The parties do not dispute that Landlord had not charged for this steam from the inception of the Lease until July 9, 2008.  Shortly before that date, Landlord installed a meter, and during the summer of 2008, it began charging Tenant for the use of steam.  Initial charges were apparently quite modest, but they became substantial later in the year.  There is also no dispute that Landlord, by its own admission, provided heat to the Tenant only to 62 degrees.  Michael McGoldrick, manager of engineering at Rockefeller Group Development Corporation, in an affidavit submitted in support of Landlord's motion, stated, "The air with which we provide heat to the Building, including the Premises, is heated to approximately 62 degrees Fahrenheit."  There is also no dispute that under New York City law, Landlord is responsible for providing its tenants with heat to 70 degrees during the cold weather.  (NYC Admin. Code, Title 27, Chapter 1, Subchapter 12, Article 5.)  Tenant has been using steam to heat its premises to the 70-degree level.  Although Landlord contended that a restaurant does not require such a high level of heat, it does not dispute its responsibility to provide heat to the legal limit of 70 degrees, and in a recent incident, when Tenant complained, it increased the level of heat supplied.

Based on the foregoing, the rights of the parties are clear.  The Lease requires Tenant to pay for hot water (Lease, § 18.4), and Tenant offers no reason why it should not pay the Landlord's reasonable charges for steam to heat the water in accordance with the plain terms of the Lease.  Tenant asserts that Landlord's failure to charge for the steam for many years should prevent Landlord from charging for the steam under any circumstances, but its waiver argument

4

is half-hearted at best and without merit. Section 26.5 of the Lease contains an anti-waiver clause that provides:

> The failure of Landlord or Tenant to insist in any instance upon the strict keeping, observance or performance of any covenant or agreement contained in this Lease or to exercise any election herein contained shall not be construed as a waiver or relinquishment for the future of such covenant or agreement, but the same shall continue and remain in full force and effect. No waiver or modification by either Landlord or Tenant of any covenant or agreement of this Lease shall be deemed to have been made unless set forth in a writing signed by the party to be charged. No surrender of possession of any part of the Premises shall release Tenant from any of its obligations hereunder unless accepted by Landlord in writing. The receipt and retention by Landlord, and the payment by Tenant, of fixed rent or additional rent with knowledge of the breach of any covenant or agreement contained in this Lease shall not be deemed a waiver of such breach by either Landlord or Tenant.

New York courts generally enforce similar non-waiver clauses. *Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 188, 834 N.Y.S.2d 147, 156 (1st Dep't 2007).

Tenant's contention that Landlord should be permanently estopped for charging for steam, based on its ten-year failure to do so, is without merit. *See Schivarelli v. Chicago Transit Auth.*, 355 Ill.App.3d 93, 823 N.E.2d 158 (Ill. App. 1st Dist. Jan. 20, 2005). There is no contention that Tenant was induced to change its position permanently by the Landlord's action, or that Tenant is unable to use the premises at all if Landlord insists on enforcing the clear terms of the Lease. Nor is Landlord attempting to recover amounts not charged over the many years before the meter was installed in 2008. Thus, the two cases cited by Tenant are not on point. In *Simon & Son Upholstery v. 601 West Assoc., LLC*, 268 A.D.2d 359, 702 N.Y.S.2d 256 (1st Dep't 2000), the Court held that a new landlord was required to allow a tenant to continue using the leased space as a photography studio and to provide the studio with after-hours elevator access, because the new landlord, when it negotiated its purchase of the premises, was aware of these

5

uses and the prior landlord's express waiver of the terms of the lease.  Similarly, in *Kiam v. Park & 66th Corp.*, 66 A.D.3d 415, 886 N.Y.S.2d 161 (1st Dep't 2009), a cooperative board knew of a sunroom construction, failed to challenge its legality under a lease for 35 years, and was denied the right to prevent the tenant from using it altogether.  In the case at hand, the question is not whether the premises are rendered unusable, but whether the Landlord can, going forward, enforce a reasonable right to payment explicitly provided for in the Lease.

Although Tenant cannot claim a permanent waiver, going forward, of the clause in the Lease that provides for steam to be provided at "Landlord's reasonable cost," the record does not contain sufficient information to determine what, if any, damages are due to the Landlord for use of steam since Landlord first charged for it in 2008.  Based upon the Lease provision that requires the Landlord to provide only cold water, it would appear that the Tenant should pay Landlord's reasonable cost for that portion of any steam that it has used to heat water.  As for the steam used to heat the premises, as noted above, New York City law requires Landlord to provide heat to 70 degrees, and the Lease requires the Landlord to provide heat at its expense.  Tenant's use of steam to provide the extra heat required by law appears to have been a reasonable way of mitigating the Landlord's failure to comply with applicable law and the Lease.  It has been held that a tenant may be authorized to provide heat for itself and offset the cost against the rent, and Landlord has provided no reason why this was not a reasonable alternative to the Tenant's seeking damages.  *Permanent Mission of Republic of Estonia to the United Nations v. Thompson*, 477 F. Supp. 2d 615, 619 (S.D.N.Y. 2007).  On the instant motions, Landlord has not shown it is *prima facie* entitled to damages for past use of steam for general heating purposes.

6

The Court's conclusions on the steam issue are therefore as follows.  Going forward, Tenant will have to determine whether it wishes to use steam to heat water or whether there is a more economical way to obtain hot water.  The parties will have to determine jointly whether it is economical to use steam to heat the premises from 62 to 70 degrees; and if it is, the portion of the cost of the steam that should reasonably be allocated to the Landlord.  That leaves the question of Tenant's liability for charges for steam since Landlord first imposed them in 2008.  This issue requires an allocation of charges between the steam used to heat water (Tenant's responsibility) and steam used for heating the premises to 70 degrees (*prima facie* Landlord's responsibility).  It also requires application of that part of § 18.5 of the Lease that provides for a supply of heat at Landlord's reasonable cost "if requested by Tenant."  The record is not clear whether Tenant requested steam, when it first had knowledge that Landlord would charge for it, and whether it had alternatives that were more economical.  Further proceedings will be needed if the parties cannot come to a reasonable resolution as to this limited damages issue.

**Real Estate Tax Escalation**

There is no dispute that the Lease contains a clause that provides for an increase in rent as a consequence of an increase in real estate taxes payable by the Landlord.  The controversy about the calculation of the appropriate amount arises from the terms of the Lease.  The escalation provided for in the Lease works off of a city tax assessment for the property as a whole.  The problem is that there has been no assessment of the building as a whole since the building was converted to a condominium form of ownership on May 9, 1996, before the Lease was signed.  The Lease not only fails to acknowledge the condominium structure, but in §10.1 of the Lease, the Landlord represents "that it is the owner in fee of the Land and Building."  Despite the condominium structure, the Landlord continued to bill tax escalation as if an assessment existed

7

for the property as a whole; however, Tenant never received an Escalation Statement (a requirement of § 2.3(e) of the Lease) or bill for real estate taxes, and Landlord has not demonstrated that a current tax assessment of the building even exists.  Tenant learned of these facts only after the multiple disputes described above arose between the parties.  Tenant claims that the Landlord is guilty of misrepresentation and has improperly billed for tax escalation amounts.

Tenant is correct to the extent it asserts that the Lease is wrongly drafted.  Moreover, Landlord cannot seriously contend that Tenant was on notice of the building's condominium form of ownership because it was a matter of public record, and Tenant was obligated to examine the record before signing the Lease.  On the other hand, Tenant has not demonstrated an entitlement to relief or to damages on the tax escalation issue based on the present record.

The remedy of reformation is available under New York law in the case of mutual mistake or unilateral mistake based on fraud.  *Gaylords Nat'l Corp. v. Arlen Realty & Dev.*, 112 A.D.2d 93, 96, 491 N.Y.S.2d 649 (1st Dep't 1985).  Mutual mistake exists when "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement."  *Chimart Associates v. Paul*, 66 N.Y.2d 570, 573, 489 N.E.2d 231, 498 N.Y.S.2d 344 (1986).  There was no mutual mistake in the instant case because the Landlord was aware of the ownership structure of its property.  Further, this is likely not a case of fraudulent concealment.  Fraud requires a false representation of a material fact, scienter or at least recklessness, deception, and injury.  *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358 (S.D.N.Y. 2009).  There is no evidence that the Landlord had an intent to defraud, and this appears to be a case of innocent misrepresentation, at best.

Courts have held that even an innocent misrepresentation is ground for the separate remedy of rescission. "New York law ... is well settled that an innocent misrepresentation of a material fact permits rescission even though made without an intent to deceive." *Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d Cir.1976); *see also Seneca Wire and Mfg. Co. v. A. B. Leach & Co.*, 247 N.Y. 1, 159 N.E. 700 (1928); *Bloomquist v. Farson*, 222 N.Y. 375, 118 N.E. 855 (1918); *Rush v. Oppenheimer & Co., Inc.*, 650 F. Supp. 682, 683 (S.D.N.Y. 1986). In addition to rescission, case law also supports reformation of a contract based upon innocent misrepresentation. *See Allen Properties v. Brydle*, 72 N.Y.S.2d 554 (N.Y. Sup. 1947), *aff'd*, 272 A.D. 817, 72 N.Y.S.2d 293 (2d Dep't 1947).[2] However, Tenant in open court disavowed any desire to rescind the Lease—the whole purpose of its Chapter 11 case, as the Court understands it, is to preserve the Lease. Tenant in its pleadings also failed to seek the equitable remedy of reformation. It has even conceded that it is liable for some tax escalation and was unable, at oral argument, to state how the escalation factor would vary if based on the appraised value of the property as a whole as opposed to the aggregate of the values of each condominium unit.

Thus, on the record before the Court, the Tenant has not shown that it is entitled to a finding that the Landlord has overcharged based on the tax escalation clause. Tenant at argument requested some discovery, and it is entitled to that before Landlord's damages can be calculated. However, on the record before the Court, Landlord is entitled to judgment on the tax escalation issue.

---

[2] Other courts have held that reformation and rescission are only available where there is some element of wrongful conduct and the Court "finds either mutual mistake or one party's unilateral mistake coupled with some fraud or wrongful conduct of the other party.... Unilateral mistake without fraud or wrongful conduct, however, is not a sufficient ground for contract rescission or reformation." *Nat'l Union Fire Ins. Co. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 902 (S.D.N.Y. 1988); *see also, Banque Arabe et Internationale d'Investissement v. Maryland Nat. Bank*, 850 F. Supp. 1199, 1225 (S.D.N.Y. 1994).

### III.    CONCLUSION

The pending cross-motions for summary judgment are disposed of as follows. In the future, Landlord is entitled to additional rent for steam requested by Tenant, at Landlord's reasonable cost therefor, for (i) heating water, and (ii) for heating the restaurant premises to a temperature in excess of 70 degrees Fahrenheit or outside of the days and times specified in § 19.1 of the Lease. As for liability for past charges for steam since the Landlord first started billing for steam in 2008, further proceedings are required to determine the amount of steam used for hot water and for heating the restaurant above 70 degrees, and to determine whether Tenant requested, explicitly or implicitly, a supply of steam for these purposes. Landlord is entitled to additional rent based on tax escalation unless the Tenant specifies, after any necessary and appropriate discovery, why the escalation factor used by the Landlord is not appropriate.

Either party may settle an order on five days' notice and may thereafter, if necessary, set this matter down for a further hearing on the open damages issues.

Dated: New York, New York
       December 10, 2009

>                    */s/ Allan L. Gropper*
>                    UNITED STATES BANKRUPTCY JUDGE