RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

Jonathan S. Pasternak
Dawn K. Arnold

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:                                                        Chapter 11
                                                              Case No. 09-14557 (ALG)

ROCK 49TH REST. CORP.
d/b/a City Lobster & Steak,

                        Debtor.

--------------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

ROCK 49TH REST. CORP., together with the Plan Funder (as defined herein), hereby jointly propose the following plan of reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement pursuant to 1125 of the Bankruptcy Code dated December __, 2009 (for a discussion of the Debtor's history, business, results of operations, historical financial information and property, and for a summary and analysis of the Plan). All parties in interest should review the Disclosure Statement. No materials, other than the Disclosure Statement and related materials transmitted therewith and approved by the Bankruptcy Court (as defined herein), have been authorized by the Bankruptcy Court for distribution to the holders of Claims and Equity Interests or other parties in interest. To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern. The rules of construction set forth in section 102 of the Bankruptcy Code (as defined herein) shall apply to the construction of the terms and provisions set forth in this Plan.

# ARTICLE I
## DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1 *"20-Day Vendor Claims"* shall mean a claim for any cost or expense of administration in connection with the Chapter 11 Case allowed under Section 503(b)(9) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.2 *"Administrative Bar Date"* shall mean the date fixed in the Confirmation Order by which all Persons asserting Administrative Claims arising before the Confirmation Date must have filed proofs of such Administrative Claims or requests for payment of such Administrative Claims or be forever barred from asserting such Claims against the Debtor, its estate or its property, or such other date as may be fixed by order of the Bankruptcy Court.

1.3 *"Administrative Claims" shall mean* any claim of a Party allowed under Section 507(a) of the Bankruptcy Code or an order of the Bankruptcy Court.

1.4 *"Administrative Professional Fee Claim"* shall mean any claim of a professional retained under the Bankruptcy Code subject to allowance under 11 U.S.C. §§ 328, 330 or an order of the Bankruptcy Court.

1.5 *"Allowed"* shall mean, whenever in the Plan the word "Allowed" precedes a defined term describing a Claim, that phrase will mean an Allowed Claim of the type described.

1.6 *"Allowed Claim"* shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to Section 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which has been filed pursuant

to Section 501(a) of the Bankruptcy Code on or before the Bar Date, and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules (as defined below) or an order of the Bankruptcy Court, or (c) as to which any objection has been determined by a Final Order (as defined below) of the Bankruptcy Court allowing such claim or any portion thereof.

1.7 *"Available Cash"* shall mean, as determined from time to time, all Cash of the estates in the Distribution Account on or after the Effective Date, after deduction of, without duplication: (a) amounts to be distributed to holders of Administrative Professional Fee Claims; (b) actual post-Petition Date expenses and liabilities of the Debtor, including expenses which accrued prior to the Effective Date; and (c) Cash to be distributed to or reserved for holders of Administrative Claims and Priority Tax Claims.

1.8 *"Avoidance Actions"* shall mean any cause of action assertable under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.9 *"Ballot"* shall mean the form transmitted to creditors with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan (as defined below) pursuant to Bankruptcy Rule 3018 and Section 1126 of the Bankruptcy Code.

1.10 *"Bankruptcy Code"* shall mean Title 11 U.S.C. Sections 101 et. seq., in effect on the Petition Date.

1.11 *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of New York, and any court having jurisdiction to hear appeals therefrom.

1.12    *"Bankruptcy Rule(s)"* shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.13    *"Bar Date"* shall mean the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtors which date has been fixed by the Bankruptcy Court as November 30, 2009.

1.14    *"Business Day"* shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.15    *"Cash"* shall mean legal tender of the United States of America or Cash equivalents.

1.16    *"Chapter 11 Case"* shall mean the above-captioned case commenced by the filing of voluntary petitions by the Debtor seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.17    *"Claim"* shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including without limitation, Claims arising under Section 502 of the Bankruptcy Code.

1.18    *"Claimant"* shall mean those Persons holding a Claim in the Chapter 11 Case.

1.19    *"Class"* shall mean a class of holders of Claims or Equity Interests (as defined herein) described in Articles II and III of the Plan.

1.20    *"Committee"* shall mean the Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Case.

1.21    *"Confirmation"* shall mean the entry of the Confirmation Order.

1.22    *"Confirmation Date"* shall mean the date upon which the Confirmation Order (as defined below) is entered by the Bankruptcy Court.

1.23    *"Confirmation Hearing"* shall mean the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.24    *"Confirmation Order"* shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

1.25    *"Contested Claim"* shall mean a Claim against the Debtor that is (i) listed in the Debtors' schedules of liabilities as disputed, contingent or unliquidated; (ii) listed in the Debtor's Schedules of liabilities as undisputed, not contingent and liquidated and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim exceeds the scheduled amount and which amount is not otherwise agreed to by the Debtor; (iii) that is not listed in the Debtor's Schedules of liabilities, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed.

1.26    *"Creditor"* shall mean: (i) a Person that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) a Person that has a Claim against the Debtor's estate of the kind specified in Sections 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.27    *"Debtor"* shall mean Rock 49th Rest. Corp.

1.28    *"Disbursing Agent"* shall mean the party that shall open and maintain a separate interest bearing bank account in which all Cash received for purposes of distribution shall be deposited in accordance with Section 345 of the Bankruptcy Code and shall distribute payment under the Plan, which Disbursing Agent shall be Rattet, Pasternak & Gordon-Oliver, LLP.

1.29    *"Disclosure Statement"* shall mean the Debtor's Disclosure Statement dated December __, 2009 describing this Plan, as amended, supplemented, or modified from time to time, prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.30    *"Disputed Claim"* shall mean any Claim (other than an Allowed Claim) (i) which is Scheduled pursuant to the Bankruptcy Code as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court for the filing of such objections, and as to which, such objection has not been determined by a Final Order (as defined below) of the Bankruptcy Court.

1.31    *"Distribution Account"* shall mean a separate interest bearing bank account in which all Cash received for purposes of distribution shall be deposited in accordance with Section 345 of the Bankruptcy Code opened by the Disbursing Agent for the express purpose of making distribution under the Plan.

1.32    *"Distribution Date"* shall mean any date on which a distribution under the Plan is to be made to the holders of Allowed Claims.

1.33    *"Effective Date"* shall mean the date the Confirmation Order becomes a Final Order.

1.34    *"Equity Interest"* shall mean any equity interest in the Debtor represented by, related to, or arising from stock or other instruments of the Debtor.

1.35    *"Executory Contract"* shall mean any of the contracts and unexpired leases to which the Debtor is a party or was a party as of the Petition Date and which is executory within the meaning of Section 365 of the Bankruptcy Code.

1.36    *"Final Order"* shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending or (ii) as to which any right to appeal or seek review, rehearing, or certiorari has been waived or (iii) an order or judgment which has been appealed, has been affirmed on appeal and as to which affirmation the time for further appeal has expired; *provided, however,* that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant to Section 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure.

1.37    *"General Administrative Expense Claim"* shall mean a claim for any cost or expense of administration in connection with the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code (as defined below) and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estates and of operating the business of the Debtor, all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under Sections 330, 331 and 503 of the Bankruptcy Code or otherwise allowed by the Court. General Administrative Expense Claims expressly exclude 20-Day Vendor Claims.

1.38    *"General Unsecured Claim"* shall mean any Claim that is not an General Administrative Claim, Administrative Professional Fee Claim, Priority Tax Claim, 20-Day Vendor Claim, Secured Claim or Other Secured Claim that arose prior to the filing of the Chapter 11 Case and includes, without limitation, Claims based upon pre-Petition Date trade accounts payable or a Claim based upon the rejection of an Executory Contract during pendency of the Chapter 11 Case.

1.39    *"Governmental Unit"* shall mean a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

1.40    *"Holder"* shall mean, as of the Distribution Date, a Person entitled to receive a distribution pursuant to the terms of this Plan.

1.41    *"Impaired"* shall mean Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.42    *"Net Profits"* shall mean the gross profit minus overhead minus interest payable.

1.43    *"Non-Tax Priority Claim"* shall mean any claim against the Debtor to the extent entitled to priority in payment under section 507(a)(4)-(6) of the Bankruptcy Code.

1.44    *"Other Secured Claim"* shall mean an equipment lender whose Claim is secured by a lien on property in which the Debtor has an interest, which lien is valid, perfected and enforceable under applicable law, to the extent of the value of the Holder's interest in the Debtor's interest in such property, as determined by Section 506 of the Bankruptcy Code.

1.45    *"Person"* shall mean any individual, corporation, partnership, association, indenture trustee, organization, stock company, venture, estate, trust, Governmental Unit or any political subdivision thereof, Equity Interest holders, retirees, or any other entity.

1.46     *"Petition Date"* shall mean July 21, 2009.

1.47     *"Plan"* shall mean this Plan of Reorganization under Chapter 11 of the Bankruptcy Code, as it may be amended, supplemented, or modified in accordance with the terms hereof from time to time.

1.48     *"Plan Funder"* shall mean Andrew Silverman, and an affiliate or a group of investors to be determined, if any.

1.49     *"Priority Tax Claim"* shall mean a Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.50     *"Proof of Claim"* shall mean proof of claim within the meaning of Rule 3001 of the Bankruptcy Rules.

1.51     *"Professional Persons"* shall mean those Persons: (a) retained by the Debtor or the Committee pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Section 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(2) and (4) of the Bankruptcy Code.

1.52     *"Pro Rata"* shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.53     *"Reorganized Debtor"* shall mean the Debtor after the Confirmation Date.

1.54     *"Secured Claim"* shall mean an Allowed Claim secured by a valid, properly perfected and enforceable mortgage, security interest and/or lien on property and assets owned

by the Debtor, to the extent of the value of such Creditor's interest in the particular Debtor's estate's interest in such property.

1.55 *"Scheduled"* shall mean as set forth in the Schedules.

1.56 *"Schedules"* shall mean the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as they may be amended from time to time.

## ARTICLE II
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

All Claims, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not Scheduled or liquidated, absolute or contingent, and all Equity Interests in the Debtors, whether resulting in an Allowed Claim or an Allowed Equity Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1 <u>Classification of Claims</u>. Section 2.2 sets forth the designation of the Classes of Claims and Equity Interests. A Claim or Equity Interest is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Equity Interest qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim or Equity Interest qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications. General Administrative Expense Claims, Professional Fees, United States Trustee fees payable under 28 U.S.C. Section 1930, Priority Tax Claims, and 20-Day Vendor Claims have not been classified and are excluded from the Classes set forth in Section 3.2 in accordance with Section 1123(a)(1) of the Bankruptcy

Code. The treatment to be provided for Allowed Claims or Equity Interests pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims or Equity Interests.

2.2 <u>Classes</u>. Unless otherwise ordered by the Bankruptcy Court, Classes 1 and 2 are unimpaired under the Plan and the holders thereof are conclusively presumed to accept the Plan, and the votes of such holders would not need to be solicited. For purposes of the Plan, those persons holding Claims against, or Equity Interests in, the Debtor are grouped in accordance with Section 1122 of the Bankruptcy Code as follows:

> <u>Class 1</u> - shall consist of Holders of Allowed Non-Tax Priority Claims.
>
> <u>Class 2</u> - shall consist of the Holder of the Allowed Secured Claims of Capital One, N.A.
>
> <u>Class 3</u> – shall consist of the Holders of Allowed Other Secured Claims.
>
> <u>Class 4</u> - shall consist of Holders of Allowed General Unsecured Claims.
>
> <u>Class 5</u> - shall consist of Holders of any or all Allowed Equity Interests in the Debtor.

## <u>ARTICLE III</u>
## TREATMENT OF CLAIMS AND CLASSES UNDER THE PLAN

3.1 <u>Unclassified Claims</u>:

(a)　　<u>General Administrative Expense Claims</u>: General Administrative Expense Claims include the actual and necessary costs and expenses incurred during the Chapter 11 Cases other than 20-Day Vendor Claims. Under the Plan, all General Administrative Expense Claims shall be paid in full, in Cash, in such amounts as (a) are incurred in the ordinary course of business by

the Debtor, (b) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such Order, or (c) may be agreed upon between the holder of such Administrative Expense Claim and the Debtor.

(b)     Administrative Professional Fees: All awards or allowances by the Bankruptcy Court of professional fees, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Administrative professional fee Claim becomes Allowed, (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Professional Fee Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. All Administrative Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be paid by the Reorganized Debtor upon receipt of an invoice therefore, or on such other terms as the Reorganized Debtor may agree to, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Reorganized Debtors and any Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such professionals, such amount shall be determined by the Bankruptcy Court.

(c)     United States Trustee's Fees: Under the Plan, all United States Trustee statutory

fees arising under 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor. The Debtor shall be responsible, through the entry of a final decree closing the case for the payment of United States Trustee quarterly fees, and pursuant to 31 U.S.C. § 3717, any interest assessed on unpaid chapter 11 quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department at the charges become past due, however, if payment of the full principal amount is received within thirty (30) days of the date of the notice of initial interest assessment, the interest assessed will be waived.

(d)     <u>Allowed Priority Tax Claims</u>: The holders of Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, if any, shall be paid in full, in Cash, in such amounts as (a) are incurred in the ordinary course of business by the Debtor, (b) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Tax Claim or any other date specified in such Order, or (c) may be agreed upon between the holder of such Tax Claim and the Debtor. To the extent Allowed Priority Tax Claims are secured by validly filed tax liens, holders of such Claims will retain such liens until all payments as prescribed by the Plan are made.

(e)     <u>20-Day Vendor Claims</u>: 20-Day Vendor Claims shall include the Allowed Administrative Priority Claims pursuant to Section 503(b)(9). Under the Plan, the 20-Day Vendor Claims shall be paid in full on the Effective Date unless the Holder specifically agrees in writing to a different treatment.

3.2 <u>Classified Claims</u>

(a) <u>Class 1:</u> Class 1 consists of all Allowed Non-Tax Priority Claims. The Debtor shall

pay to Holders of Class 1 Claims the amount of their Allowed Claim in full and in Cash on the Effective Date, in full and final satisfaction of its Claims as against the Debtors unless the Holder specifically agrees in writing agrees to a different treatment. Holders of Class 1 Claims are not Impaired under the Plan, are not entitled to vote on the Plan and are deemed to accept the Plan.

Class 2: Class 2 consists of the Holder of the Allowed Secured Claims of Capital One. Capital One shall retain its security interests in the Debtor's personal property, and shall continue to be paid in the ordinary course pursuant to the relevant loan and security agreement and/or any stipulation or modifications thereto. Holders of Class 2 Claims are not Impaired under this Plan and are deemed to accept this Plan.

(b)     Class 3: Class 3 consists of the Holders of Other Secured Claims. The Holders of Class 3 Other Secured Claims shall retain their respective security interests in the Debtors' personal property, as applicable, and shall continue to be paid in the ordinary course pursuant to the respective security agreements and/or any stipulations or modifications thereto. Holders of Class 3 Claims are not Impaired under the Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan.

(c)     Class 4: Class 4 consists of the Holders of Allowed General Unsecured Claims. Holders of Allowed General Unsecured Claims shall each receive 15% of their Allowed Claims, in Cash, payable 7.5% within 30 days after the Effective Date and 7.5% six months thereafter, in full and final satisfaction of all Allowed Class 4 Claims. Holders of Class 4 Claims are Impaired under this Plan.

(d)     Class 5: Class 5 consists of the Equity Interest of Andrew Silverman who shall retain his Equity Interest in the reorganized Debtor. Class 5 Equity Interests are unimpaired under

this Plan.

3.3    <u>Acceptance by Impaired Classes of Claims</u>. Class 4 shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-third in amount of the Allowed Claims actually voting in such class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under Section 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

3.4    <u>Presumed Acceptance of the Plan</u>. Classes 1, 2 and 3 are deemed unimpaired under the Plan, and therefore, are deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.

3.5    <u>Fair and Equitable Test; Cramdown</u>.  Notwithstanding a rejection by a Class of Impaired creditors, the Bankruptcy Court may confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if it is demonstrated to the Bankruptcy Court that at least one Impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are similar to those of the dissenting Class and if no Class receives more than it is entitled to on account of its Claims or Equity Interests.

The Bankruptcy Code establishes different "fair and equitable" tests for General Unsecured Creditors and Equity Interest Holders as follows:

(a)    <u>General Unsecured Creditors</u>. Either (i) each General Unsecured Creditor in a

15

non-accepting Impaired Class receives or retains under the Plan property having a present value greater than that which it would receive under a Chapter 7 liquidation or (ii) the holders of Equity Interests that are junior to the Claims of the dissenting Class will not retain any property under the Plan.

(b) <u>Equity Interest Holders</u>. Under the Plan, the Class 5 the Equity Interests of Andrew Silverman are unimpaired under this Plan, in consideration of the commitment to (i) make (i) up to a $300,000 Plan capital contribution which shall include (a) any debtor-in-possession loan required to provide working capital and sustain operations during the Chapter 11 Case; (b) make renovations to the premises as necessary to convert the décor to a white cloth restaurant known as Steak Frites; and (c) fund the Plan, and (ii) all amounts necessary to cure Allowed Claims for arrears determined by the Bankruptcy Court to be due under the Debtor's restaurant lease, except in the event the dispute concerning steam charges is resolved in favor of the Landlord, then Andrew Silverman shall not have the obligation to cure the Lease or fund the Plan. As a result of said consideration of new value by the Plan Funder and Andrew Silverman, the Plan is fair and equitable to Holders of Class 4 Claims.

3.6 <u>Full and Final Satisfaction.</u> Performance of all of the obligations hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims against the Debtor.

**ARTICLE IV**
**PLAN IMPLEMENTATION**

4.1 <u>Means for Execution</u>. The Plan will be funded by two sources. First, the Plan Funder shall make a capital contribution to the Reorganized Debtor to make any debtor-in-possession loan required to sustain operations during the Chapter 11 Case and make renovations

16

to the premises in an amount not to exceed the $300,000 Plan capital contribution described below to (a) fund the payments required under the Plan on the Effective Date, (b) fund renovations to the Debtor's leasehold premises and (c) further capitalize the Reorganized Debtor's post-Effective Date operations. The Plan Funder shall also commit to making any debtor-in-possession loans that may be required by the Debtor to sustain post-Petition Date operations pending confirmation of the Plan, which amount shall not exceed $100,000 and is included as part of the $300,000 Plan capital contribution. The Plan Funder shall have the right to terminate its agreement to fund upon five (5) business days notice to the Debtor and Committee (i) in the event the Plan is not confirmed on or before February 28, 2010; and (ii) in the event the dispute with the Landlord regarding alleged steam rent charges is determined adversely against the Debtor in the sole discretion and judgment of the Plan Funder. The Plan Funder shall also commit to funding any Allowed cure Claim to the Debtor's landlord, except in the event the steam charge dispute is determined adversely to the Debtor in the sole discretion and judgment of the Plan Funder.

4.2 <u>Post-Effective Date Management of the Reorganized Debtor.</u> Andrew Silverman or his designee or affiliate shall manage the day-to-day operations of the Reorganized Debtor.

4.3 <u>Provisions Concerning Distributions</u>.

(a) <u>Funding of Reserves</u>. To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Debtor shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for the payment of Allowed Claims and expenses of the estates prior to the Effective Date, and such Claims shall be paid as provided for in Article II and III.

(b) <u>Transmittal of Distributions and Notices</u>. Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage

prepaid, in an envelope addressed to that Person at the address indicated on a properly filed Proof of Claim or, absent such a Proof of Claim, the address that is Scheduled for that Person. The Distribution Date shall be the date of mailing, and the property distributed in accordance with this section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

(c) <u>Manner of Payments under the Plan</u>. Payments to be made pursuant to the Plan shall be made by check drawn on a separate, interest bearing domestic bank account maintained by the Disbursing Agent at JP Morgan Chase Bank, Rosedale, White Plains branch.

(d) <u>Fractional Cents</u>. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

(e) <u>Unclaimed Cash</u>. Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within six (6) months from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a Proof of Claim filed with the Bankruptcy Court or if no Proof of Claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. The Disbursing Agent, Debtor and Reorganized Debtor shall use commercially reasonable efforts to obtain current addresses for all Claimants. The Disbursing Agent shall notify the Debtor and counsel to

the Committee of all returned distributions. All unclaimed Cash shall be returned to the Reorganized Debtor.

(f) <u>Disputed Payments or Distribution</u>. In the event of any dispute between and among Claimants (including Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person under this Plan, the Debtor may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Debtors shall make distributions on account of the undisputed portion of a Claim to such Claimants.

(g) <u>Setoffs</u>. Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the estates may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against any Claim and any distribution to be made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtor or the estate may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor or the estate, nor any provision of this Plan shall constitute a waiver or release by the Debtor or the estate of any such Claims, rights and causes of action that the Debtor or the estates may possess against such holder. To the extent the estates fail to set off against a creditor and seek to collect a claim from such creditor after a distribution to such creditor pursuant to the Plan, the estates shall be entitled to full recovery on their claim against such creditor.

## ARTICLE V
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

5.1     Objections. An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time on or before the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court. Notwithstanding the foregoing, the Debtor shall file any and all objections to Claims no later than ninety (90) days after the Effective Date.

5.2     Amendment of Claims. A Claim may be amended prior to the Effective Date only as agreed upon by the Debtors and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

5.3     Estimation of Disputed Claims. The Debtor shall seek an order or orders from the Bankruptcy Court, estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims reserve for each Class, and may seek to set the amount of any particular Claim for final allowance purposes pursuant to sections 105 and 502(c) of the Bankruptcy Code. This estimate shall be used to calculate and fix distributions to holders of Allowed Claims and the amount of the respective Disputed Claims Reserve. Such a procedure may also be utilized for Administrative Claims, Priority Tax Claims and Priority Claims. In the event the Debtor seeks to estimate such Claims, Disputed Claims reserves shall be established for each such category of Claims.

5.4    <u>Reserve for Disputed Claims</u>. The Plan Funder shall reserve for account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon. The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

5.5    <u>Distributions to Holders of Subsequently Allowed Claims</u>. Unless another date is agreed on by the Debtors and the holder of a particular subsequently Allowed Claim, the Debtors shall, within ten (10) days after an Order is entered by the Bankruptcy Court, and after such Order becomes Final and Non-Appealable, make such distribution consistent with the terms of the Plan. With respect to the Allowed Amount of such theretofore Disputed Claim is determined, the Debtors will distribute to such holder with respect to such subsequently Allowed Claim that amount, in Cash, from the Cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of Cash otherwise available to the Debtors, equal to that amount of Cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

## ARTICLE VI
## EXECUTORY CONTRACTS

6.1    <u>Assumption of Executory Contracts</u>. Any Executory Contract, in whole or in part,

to which any of the Debtors are a party and which has not been rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code during the pendency of the Chapter 11 Cases, shall be deemed assumed as of the Effective Date, except the executory contract with Flowers .

6.2    <u>Assumption of Debtor's Lease for Restaurant Premises.</u> Confirmation of the Plan, and the Plan Funder's commitment  thereunder, is specifically conditioned upon the Bankruptcy Court permitting and authorizing the assumption of the lease (the "Lease") dated October 1, 1997 between 1251 Americas Associates, L.P. (the "Landlord") by the Debtor on the Effective Date, subject to the payment of any pre-Petition Date cure Claims as may be determined and Allowed by the Bankruptcy Court, with a specific conclusion of law, ruling or legal determination or adjudication by the Bankruptcy Court that (i) the Debtor's change of restaurant from "City Lobster" to a French themed white table cloth restaurant known as "Steak Frites" on the Effective Date does not render the Lease void or terminated and is permitted thereunder; and (ii) the disputed alleged steam rent charges are determined not to be due and resolved in favor of the Debtor by the Bankruptcy Court to the satisfaction and discretion of the Plan Funder

6.3    <u>Cure of Defaults.</u> As to any Executory Contracts assumed pursuant to the Plan, the Reorganized Debtor shall, pursuant to the provisions of Section 1123(a)(5)(G) of the Bankruptcy Code, cure all defaults existing under and pursuant to such executory contract by paying the amount, if any, claimed by any party to such executory contract either in a Proof of Claim, which Proof of Claim shall be filed with the Court within thirty (30) days of such assumption, or as set forth in the Debtors' Schedules. Payment of such Claims shall be made on the later of (i) thirty (30) days after the expiration of the period for filing an objection in respect of any Proof of Claim or (ii) thirty (30) days after an order of the Bankruptcy Court allowing

such Claim becomes a Final Order.

**ARTICLE VII**
**EFFECT OF CONFIRMATION**

7.1     <u>Vesting of Property</u>. On the Effective Date, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and clear of all liens, Claims, interests and encumbrances of any kind (except for any liens created by purchase money security interests which are duly perfected and enforceable), subject to and except as otherwise provided in the Plan.

7.2     <u>Discharge Granted Under Plan</u>. The Debtor's discharge shall be governed by Bankruptcy Code section 1141(d)(1).

7.3     <u>Waiver of Claims</u>. As of the Confirmation Date, but subject to the occurrence of the Effective Date and only to the extent permitted by applicable law, and except as otherwise expressly provided in the Confirmation Order and/or this Plan, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor or the estate shall be deemed, by virtue of their receipt of distributions and/or other treatment contemplated under the Plan, to have forever covenanted with each of their respective present and former officers, directors, members, agents, employees, representatives, financial advisors, professionals, partners, accountants and attorneys and not to (i) sue, or otherwise seek any recovery from any of the foregoing, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date arising out of the business or affairs of the Debtor, or (ii) assert any Claim, obligation, right, cause of action or liability which any such holder of a Claim against or Equity Interest in the Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or

hereafter arising, based in whole or in part upon any act or omission, transactions or the occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or this Plan.

7.4     Payment of Estate Professionals for Post-Confirmation Date Services. The reasonable compensation and out-of-pocket expenses incurred post-Confirmation by Professional Persons retained by the Debtor or the Committee during these Chapter 11 Cases shall be paid by the Reorganized Debtors within ten (10) days upon presentation of invoices for such post-petition professional services. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

**ARTICLE VIII**
**EVENTS OF DEFAULT**

8.1     Events of Default. The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default"):

(a) The failure of the Debtor to make any payment required to be made under the Plan, which failure shall have remained uncured for a period of ten (10) days after the date such payment is required to be made, unless the time for such payment has been extended in accordance with the Plan.

(b) The failure of the Debtor to comply with any of the covenants contained in the Plan, which failure shall remain uncured for a period of ten (10) days after the Debtor has received written notice of such failure.

8.2     Effect of Default. In the event that the Debtor defaults under the provisions of the Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an order of the Bankruptcy

Court compelling the Debtor to make such payment or act in a manner consistent with the provisions of the Plan or seeking the conversion of the Chapter 11 Case to a Chapter 7 proceeding.

## ARTICLE IX
## DISCHARGE OF THE DEBTOR

9.1     <u>Discharge of the Debtor.</u> Occurrence of the Effective Date shall result in the discharge of any indebtedness or entitlement to interest or other such legal or equitable right to payment not specifically contemplated by the Plan as against the Debtor. Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against released parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against released parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties.

<u>Exculpation</u>. Neither the Debtor, nor the Reorganized Debtors, nor the Committee, nor any of their respective members, officers, directors, general partners, managing agents, owners,

or employees (acting in such capacity) nor any professional person employed by the Debtors, the Reorganized Debtors, or the Committee, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability satisfied, discharged and released pursuant to the Plan; provided, however, that nothing in the Plan shall, or shall be deemed to, release the Debtor or Reorganized Debtor from, or exculpate the Debtor or Reorganized Debtor with respect to, their respective obligations or covenants arising pursuant to the Plan from willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. If the Plan is confirmed containing releases of liability as to the Debtors and the Reorganized Debtor, creditors will be unable to pursue any Claims that are discharged under the Plan, but creditors can pursue Claims against the Debtor or the Reorganized Debtor that may arise in the future, or pursuant to the Plan. Any such liability against the Debtors' professionals also will not be limited to their respective clients contrary to the requirement of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009.

9.2    Injunction. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests against or in the Debtor shall, as of the Effective Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor arising out of any act or omission of the Debtor;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor with regard to such entities' Claim against the Debtor;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor;

(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor; and

(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

## ARTICLE X
## CHANNELING, INJUNCTION, SECURITY
## AGREEMENT AND PERSONAL GUARANTEES

10.1  <u>Released Parties; Reasons for Channeling</u>.  This Plan expressly contemplates the channeling of all Claims of Creditors holding Allowed Claims against the Debtor, Creditors who have filed Claims against the Debtor that have been expunged, disallowed and/or recharacterized by the Court as other than debt, Creditors who fail to file Claims before the Bar Date previously set for the filing of Claims and all Claims of the Debtor's estate against Andrew Silverman ("the

27

Released Party"), towards the estate and specifically the proceeds made available to the estate for distribution by or on behalf of Andrew Silverman and away from the Released Party. The Released Party is making substantial contribution to fund the Plan, i.e., up to a $300,000 investment in addition to payment of all cure costs under the Debtor's Lease to be determined, but believed to be approximately $70,000 (not including alleged disputed real estate tax charges in the approximate amount of $65,000 and alleged disputed steam charges in the approximate amount of $177,000), and has been and continue to be vital to the survival of the Debtor.

10.2   <u>Additional Reasons for Channeling</u>.   If the Released Party is forced to defend lawsuits and to pay out substantial amounts of money to Creditors on debts that arose from the Debtor's businesses, it will be manifestly impossible for Andrew Silverman to devote financial resources towards the reorganization of the estates.  In addition, if any of these Creditors succeed in either obtaining judgments or forcing settlements that the Released Party is forced to pay, his ability to make the capital contribution towards the funding of the Debtors' Plan will be gravely endangered.

10.3   <u>Channeling</u>.   Therefore, this Plan provides that upon Confirmation and upon the distributions as contemplated herein, all Claims of Creditors or the Debtors' estates on behalf of the Creditors, that are potentially viable against the Released Party, specifically Claims supported by personal guarantees, and/or Claims purporting to allege any breach of fiduciary duty, whether styled as an action for money or otherwise, as well as any avoidance or other causes of action of any kind belonging to the Debtor's estate are channeled towards the Debtor's estate and shall be deemed satisfied by the distributions made under the Plan and eliminated and specifically enjoined as to the Released Party. To the extent all of the contributions are not made

as contemplated under the Plan, then the Claims shall not be deemed satisfied and creditors may enforce any and all rights and remedies afforded them under any contractual or other obligations from a Released Party.

10.4 <u>Effects of Channeling</u>. The foregoing sets forth that Creditors as well as the Debtor's estate, holding Claims against the Released Party relating to business transactions involving the business and/or property owned, leased or operated by the Debtor, pursuant to written personal guarantees of Andrew Silverman, avoidance or other causes of action of any kind belonging to the Debtor's estate or otherwise, will not be able to collect from the Released Party once said Claims have been paid by the Debtor pursuant to the terms of the Plan, as such Claims will be voided as to the Released Party.

10.5 <u>No Release of Governmental Claims</u>. Notwithstanding any provision herein to the contrary, nothing herein is intended to or does release any nondebtor of any liabilities or obligations to or Claims or rights of the United States of America or its agencies or subdivisions or New York State Department of Taxation and Finance. Additionally, nothing in the Confirmation Order or the Plan shall affect a release as against the Released Party of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority; nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority whatsoever including from bringing any claim, suit, action or other proceedings against the Released Party for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal

laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate the Released Party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, including New York State Department of Taxation and Finance.

10.6  <u>Professional Liability</u>.  In addition, no provision contained herein shall have the effect of limiting the liability of the professionals of the Debtor or the Reorganized Debtor to their clients contrary to the requirements of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009, or for fraud, gross negligence, willful misconduct, malpractice, criminal conduct or unauthorized use of confidential information that causes damages, or ultra vires acts.

### ARTICLE XI
### RETENTION OF JURISDICTION

11.1  The Debtors and such other applicable parties in interest as set forth in this Plan reserve the right, as set forth in this Plan, to institute preference and fraudulent conveyance actions, and object to the allowance of Claims for a period of ninety (90) days after the Effective Date.

11.2  The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases:

(a)  To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b)  To determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for

professional and similar fees;

(c)     To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts;

(d)     To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 157 and 1334;

(e)     To determine all disputed, contingent or unliquidated Claims;

(f)     To determine requests to modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Bankruptcy Code;

(g)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

(i)     To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII
## GENERAL/MISCELLANEOUS PROVISIONS

12.1    Modification of the Plan. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan with the approval of the Plan Funder prior to the Confirmation Date or as soon as practicable thereafter. After the Confirmation Date, the Debtor may, with approval of the Plan Funder,  subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the

purposes and intent of the Plan.

12.2  <u>Conditions to the Effective Date of the Plan</u>. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(a)  the Confirmation Order in form and substance reasonably acceptable to the Debtor and the Plan Funder shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)  the Bankruptcy Court enters an Order permitting and authorizing the Lease to be assumed by the Debtor on the Effective Date, with a specific conclusion of law, ruling or legal determination or adjudication by the Bankruptcy Court that (i) the Debtor's change of restaurant from "City Lobster" to a French themed white table cloth restaurant known as "Steak Frites" on the Effective Date does not render the Lease void or terminated and is permitted thereunder; and (ii) the disputed alleged steam rent charges are determined not to be due and resolved in favor of the Debtor by the Bankruptcy Court.

(c)  all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered.

In the event that one or more of the conditions specified have not occurred on or before ten (10) days after the Confirmation Date, upon notification submitted by the Debtor to the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all Holders of Claims and Equity Interests shall be restored to the <u>status quo ante</u> as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a

waiver or release of any Claim or Equity Interest by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

        12.3    <u>Withdrawal or Revocation of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

        12.4    <u>Conditions to Withdrawal, Modifications and Amendments</u>. Any act to amend, modify, revoke or withdraw the Plan shall require the consent of the Debtor and the Plan Funder. The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes regarding the foregoing.

        12.5    <u>Notices</u>. All notices and correspondence should therefore be forwarded in writing to:

If to the Debtor:             Rattet, Pasternak & Gordon-Oliver, LLP
                                550 Mamaroneck Avenue
                                Harrison, New York 10528
                                (914) 381-7400
                                Attn: Jonathan S. Pasternak, Esq

If to the Plan Funder:          Andrew Silverman
                                12 West 23rd Street
                                New York, New York 10010
                                (917) 903-9966

        12.6    <u>Post-Effective Date Powers</u>. After the Effective Date, the powers of the Debtor and Reorganized Debtor shall include, but not be limited to, the following:

        (a)     Review of all Claims and proposed distributions to Creditors pursuant to the Plan;

        (b)     Review and participation in all pending and further litigation before the

Bankruptcy Court;

(c)     Authority to make any objections to Claims, where appropriate, as well as authority to commence adversary proceedings on behalf of the with respect to Avoidance Actions under Sections 547 through 552 of the Bankruptcy Code; and

(d)     Such other responsibilities and obligations as may be vested in the Debtor or as may assumed pursuant to order of the Bankruptcy Court or pursuant to this Plan or the Bankruptcy Code.

12.7     <u>Post-Confirmation Reports and Fees.</u> The Debtor shall be responsible for filing post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930 until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

12.8     <u>Preservation of Insurance.</u> The discharge and release of the Debtor as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor or other Person.

12.9     <u>U.S. Trustee Fees and Monthly Operating Reports.</u> After the Confirmation Date, the Debtor will pay or cause the payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and will file or cause the filing with the Bankruptcy Court and serve or cause service on the U.S. Trustee of monthly operating reports while the Chapter 11 Case remains open, unless the Bankruptcy Court orders otherwise.

12.10     <u>Payment Dates</u>. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such

payment or performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

12.11    Applicable Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

12.12    Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

12.13    Reservation of Rights. Neither the filing of this Plan, nor any statement or provision contained herein, be nor be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 Case.

12.14    Severability. Except as to terms which would frustrate the overall purpose of this Plan, should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.15    Confirmation Order. The Confirmation Order shall ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct or gross negligence.

12.16    Interpretation, Rules of Construction, Computation of Time, and Choice of Law.

(a)    The provisions of the Plan shall control over any descriptions thereof contained in

the Disclosure Statement.

(b)     Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any Exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in such Exhibit to the Plan.

(c)     The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan, unless the context requires otherwise.

(d)     Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(e)     Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)     Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)     Captions and headings to Articles and Sections in the Plan are inserted for the

convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretations of any provisions hereof.

(h)     Whenever from the context it is appropriate, each term stated in either the singular of the plural shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)     All exhibits to the Disclosures Statement are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

(k)     Subject to the provisions of any contract, certificate, bylaws, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

(l)     The Court shall retain jurisdiction to determine all issues arising under the confirmed Plan of Reorganization.

12.17    <u>No Admissions</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including without limitation, any liability on or treatment of any Claim, or the propriety of a Claim's classification.

Dated: New York, New York
    December 16, 2009

ROCK 49TH REST. CORP.
*Debtor-In-Possession*

*/s/ Andrew Silverman*
By: _____
    Andrew Silverman, President

RATTET, PASTERNAK & GORDON OLIVER, LLP
*Attorneys for the Debtor*
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

*/s/ Robert Rattet*
By: _____
    Robert L. Rattet

ANDREW SILVERMAN
*Plan Funder*

*/s/ Andrew Silverman*

By:_____
    Andrew Silverman